In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.

Gerald HOGAN, M.D.,
Plaintiff-Appellant,

v.

The DOW CHEMICAL COMPANY; Diamond Shamrock Chemicals Company; Hercules Incorporated; Monsanto Company; T H Agriculture & Nutrition Company, Inc.; and Uniroyal, Inc., Defendants-Appellees.

Clara FRATICELLI, et al.,
Plaintiffs-Appellants,

v.

The DOW CHEMICAL COMPANY; Diamond Shamrock Chemicals Company; Hercules Incorporated; Monsanto Company; T H Agriculture & Nutrition Company, Inc.; Uniroyal, Inc.; the United States of America; and Ten Former Regents of the University of Hawaii, Defendants-Appellees.

Nos. 1084, 1110, 1111 and 1137, Dockets 85–6161, 85–6223, 85–6339 and 85–6341.

United States Court of Appeals,
Second Circuit.

Argued April 10, 1986.

Decided April 21, 1987.

Robert A. Taylor, Jr., Washington, D.C. (Wayne M. Mansulla and Ashcraft & Gerel, Washington, D.C., of counsel), for plaintiffs-appellants.

Robert C. Longstreth, Trial Atty., Torts Branch, Civil Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Raymond J. Dearie, U.S. Atty. E.D.N.Y., and Joan M. Bernott, Sp. Litigation Counsel, Washington, D.C., of counsel), for defendant-appellee U.S.

John C. Sabetta, New York City (Townley & Updike, New York City, of counsel), for defendant-appellee Monsanto Co.

Leonard L. Rivkin, Garden City, N.Y. (Rivkin, Radler, Dunne & Bayh, Garden City, N.Y., of counsel), for defendant-appellee The Dow Chemical Co.

Steven S. Michaels, Deputy Atty. Gen., State of Hawaii, Honolulu, Hawaii (Corinne K.A. Watanabe, Atty. Gen., State of Hawaii, Honolulu, Hawaii, of Counsel), for defendants-appellees Regents of the University of Hawaii.

Clark, Gagliardi & Miller, White Plains, N.Y., on the brief, for defendant-appellee T H Agriculture & Nutrition Co., Inc.

Shea & Gould, New York City, on the brief, for defendant-appellee Uniroyal, Inc.

Kelley Drye & Warren, New York City, on the brief, for defendant-appellee Hercules Inc.

Before VAN GRAAFEILAND, WINTER and MINER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

The above captioned appeals raise a number of issues distinct from that of causal relation, the dominant issue in most Agent Orange cases, and will be disposed of largely on the basis of those unrelated issues. The appeals are from a dismissal pursuant to Fed.R.Civ.P. 37(b)(2) and from summary judgments, granted by Chief Judge Weinstein of the United States District Court for the Eastern District of New York in opinions reported at 611 F.Supp. 1290 and 611 F.Supp. 1285. The Rule 37(b)(2) dismissal was against Dr. Gerald Hogan, a resident of Nevada. The summary judgments dismissed the complaints of three residents of Hawaii, James K. Oshita and Masao Takatsuki, who sue for personal injuries, and Clara Fraticelli, who sues for

the wrongful death of her husband, William. Our discussion of the background and procedural history of this litigation appears in Judge Winter's lead opinion, 818 F.2d 145. For purposes of convenience, the appeals were briefed and argued together.

### THE HOGAN APPEAL

In 1966, Gerald Hogan, a thirty-five-year old doctor, spent four months in Vietnam under contract with the United States Agency for International Development. For one month, he worked at a civilian hospital in Da Nang. During the remaining three months, he was a patient in a United States hospital in the same city. He now claims that a variety of illnesses from which he suffers were caused by exposure to Agent Orange which had accumulated on the clothing of native patients or was carried by dust in the air.

In 1981, Dr. Hogan sued to recover for his injuries, and, in due course, his case became part of the multidistrict litigation in the Eastern District of New York. On March 15, 1985, the magistrate appointed by Chief Judge Weinstein to control discovery ordered that Dr. Hogan's oral deposition be taken on March 21 and 22. The deposition was commenced in the yard of Dr. Hogan's home but was discontinued after several hours when Dr. Hogan, claiming that he was suffering from cardiac arrhythmia (an alteration in the rhythm of the heart beat), refused to continue. The magistrate ordered plaintiff examined by an independent physician, who reported that the deposition could be continued without adversely affecting the plaintiff's health. Nonetheless, with a conceded understanding of the possible consequences of his refusing to continue with the deposition, Dr. Hogan refused. The district court found that plaintiff's claim of ill health was unfounded, "an excuse to prevent being embarrassed by a searching deposition", and a "blatant attempt to frustrate discovery." 611 F.Supp. at 1294–95.

In view of the district court's factual findings, which are not clearly erroneous, and Dr. Hogan's awareness of the consequences of his refusal to obey the magistrate's order, we reject Dr. Hogan's contention that the district court erred in dismissing his complaint. Although dismissal unquestionably was strong medicine, the "[h]arshest of all ... orders," *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir.1979), disposition of the almost unprecedented volume of Agent Orange cases would be interminably delayed if the participants were permitted to disobey court orders with little fear of sanction. In litigation of such epic proportions as this, it is particularly important that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court ..., not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976); *see United States Freight Co. v. Penn Central Transp. Co.*, 716 F.2d 954 (2d Cir.1983) (per curiam); *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 615 (2d Cir.1964), *cert. dismissed*, 380 U.S. 248 and 249, 85 S.Ct. 934, 13 L.Ed.2d 817 and 818 (1965). The judgment of the district court is affirmed.

### THE HAWAIIAN APPEALS

In 1967, while James Oshita, Masao Takatsuki and William J. Fraticelli were working for the University of Hawaii at its College of Tropical Agriculture and Human Resources, they allegedly sustained injuries caused by exposure to Agent Orange which was being tested in the fields by University employees. All three filed Worker's Compensation claims, Oshita and Fraticelli in 1979 and Takatsuki in 1981, and all were awarded benefits. Fraticelli died in April 1981. On January 12, 1981, Oshita and Takatsuki presented administrative claims to the United States pursuant to 28 U.S.C. § 2401(b), no such claim has been filed by Fraticelli's widow, Clara. On January 11, 1982, Oshita, Takatsuki and Clara

Fraticelli, on behalf of herself and her husband's estate, commenced this suit in the United States District Court for the District of Hawaii seeking relief not only for themselves but also for a proposed class consisting of everyone on the Island of Kauai who had been exposed to Agent Orange. In addition to the several chemical companies which allegedly manufactured the injurious herbicide, the complaint named as defendants ten Regents or former Regents of the University of Hawaii, together with the United States and its Department of Defense. Over the objection of the plaintiffs, the case was transferred to the Eastern District of New York by the Judicial Panel on Multidistrict Litigation.

In Hawaii, an action for personal injuries must be brought within two years after the cause of action accrues. Haw. Rev.Stat. § 657–7. A claim accrues under this statute when the plaintiff discovers or reasonably should have discovered the complained of act, the injury and the causal connection between the two. *Yamaguchi v. Queen's Medical Center*, 65 Haw. 84, 648 P.2d 689 (1982). The district court held that, insofar as the plaintiffs' personal injury claims were concerned, the two-year statute started to run no later than 1979, and appellants concede that the Hawaiian statute, standing alone, would have barred their common-law, personal injury claims prior to the bringing of their suits in 1982. However, relying on *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), they contend that the running of the statute was tolled by the bringing of the principal Agent Orange class action. This reliance is misplaced.

The limitation periods of *American Pipe* and *Crown, Cork* were derived from federal statutes. Here, we are dealing with Hawaii's limitation statutes. Because none of them provides for tolling in a situation such as exists here, it is doubtful that either *American Pipe* or *Crown, Cork* can be treated as applicable precedent. *See*

*Chardon v. Fumero Soto*, 462 U.S. 650, 660–62, 103 S.Ct. 2611, 2618–19, 77 L.Ed.2d 74 (1983); *Board of Regents v. Tomanio*, 446 U.S. 478, 483–86, 100 S.Ct. 1790, 1794–96, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466–67, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975).

We note, however, Justice Rehnquist's categorical statement in his *Chardon* dissent that "[i]f the law of a particular State was that the pendency of a class action did not toll the statute of limitations as to unnamed class members, there seems little question but that the federal rule of *American Pipe* would nonetheless be applicable." 462 U.S. at 667, 103 S.Ct. at 2621. Assuming that for "the purposes of litigatory efficiency served by class actions", *Johnson, supra*, 421 U.S. at 467 n. 12, 95 S.Ct. at 1723 n. 12, the district court agreed with this observation, Oshita's and Takatsuki's claims against the chemical companies still were properly barred.

In *American Pipe*, the Court declared the pertinent tolling rule to be that the commencement of a class action tolls the applicable statute of limitations "as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554, 94 S.Ct. at 766. In the instant case, the principal Agent Orange action upon which these personal injury claimants base their claim of tolling was certified as a class action and continued as such until it was settled. These Hawaiian claimants never became part of that action. Instead, as stated above, they attempted unsuccessfully to initiate their own class action on behalf of the populace of Kauai. Moreover, their attorney, in an affidavit opposing the removal of their action to the Eastern District of New York, stated that the issues involved in the Hawaiian plaintiffs' suit were "substantially different" from those in the other actions and that the causes of action were "separate and distinct" from those in the already-removed actions. To some extent, at least, he was correct.

From the very outset, the district court recognized the principal Agent Orange class action as one brought on behalf of "Vietnam war veterans and members of their families claiming to have suffered damage as a result of the veterans' exposure to herbicides in Vietnam." 506 F.Supp. 762, 768. This recognition was based upon a fair reading of the original class action complaints. The class which the district court certified consisted of such veterans, their spouses, parents, and children, who were injured as a result of the veterans' Vietnam exposure. 100 F.R.D. 718, 731–32.

The intent of the *American Pipe* rule is to preserve the individual right to sue of the members of a proposed class until the issue of class certification has been decided. *Crown, Cork, supra*, 462 U.S. at 354, 103 S.Ct. at 2398 (Powell, J., concurring). Its purpose is not to toll the statute of limitations for persons such as these Hawaiian plaintiffs who were not members of either the proposed or certified class. The district court did not err therefore in dismissing the personal injury claims as against the chemical companies and the University of Hawaii Regents. However, because Mrs. Fraticelli's cause of action for the wrongful death of her husband did not accrue until his death in 1981, Haw.Rev. Stat. § 663–3, her action against the chemical companies, brought in 1982, was not barred by the two-year personal injury statute of limitations, Haw.Rev.Stat. § 657–7.

■ Dismissal of all personal injury and related wrongful death claims against the Regents was required because the Hawaiian compensation statute provides the exclusive remedy against fellow employees for work-related injuries. Haw.Rev.Stat. § 386–5. Appellants' claim under 42 U.S.C. § 1983 against the Regents, based on the same injuries, is so devoid of merit, *see Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *McClary v. O'Hare*, 786 F.2d 83 (2d Cir.1986), that

appellants do not even contend on appeal that their action against the Regents should be reinstated.

■ Although the timeliness of actions against the United States is not governed by the Hawaiian statute of limitations, section 2401(b) of 28 U.S.C. provides time limitations that are more restrictive in that they are jurisdictional in nature. That section provides in substance that a tort claim against the United States is barred unless made in writing to the appropriate federal agency within two years after the claim accrues and an action is brought thereon within six months after the claim is denied. The burden is on the plaintiff to both plead and prove compliance with the statutory requirements. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936); *Altman v. Connally*, 456 F.2d 1114, 1116 (2d Cir.1972) (per curiam); *Bruce v. United States*, 621 F.2d 914, 918 (8th Cir.1980); *Clayton v. Pazcoquin*, 529 F.Supp. 245, 247–49 (W.D.Pa.1981). In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim. *Wyler v. United States*, 725 F.2d 156, 159 (2d Cir.1983).

Plaintiffs' complaint does not allege that the filing requirements of section 2401(b) were complied with. Moreover, it appears to be conceded that Mrs. Fraticelli did not file a claim for her husband's death. Because of Mrs. Fraticelli's failure to file, her complaint against the United States should have been dismissed for lack of jurisdiction. *Gallick v. United States*, 542 F.Supp. 188, 191 (M.D. Pa. 1982). However, the Government concedes that Oshita and Takatsuki filed claims, and therefore the complaint could be amended upon remand to allege that fact. Accordingly, we will assume an amendment and address their claims on the merits.[1]

■ A well-recognized exception to the Government's waiver of immunity for tort liability is the "discretionary function" exception found in 28 U.S.C. § 2680(a). The

---

**1.** If addressed on the merits, Mrs. Fraticelli's claim would be disposed of in the same manner as Oshita's and Takatsuki's.

governmental acts of which the Hawaiian plaintiffs complain fall within this exception. It cannot be seriously contended that the decision to use Agent Orange as a defoliant was anything but a discretionary act. In pursuance of this decision, the Government entered into a contract with the University of Hawaii to perform field tests with the herbicide. Plaintiffs, who claim to have been injured during the course of those field tests, cannot remove them from the category of discretionary functions by vague and irrelevant allegations of negligent labeling, shipping, handling, etc. *See Dalehite v. United States,* 346 U.S. 15, 37–45, 73 S.Ct. 956, 969–72, 97 L.Ed. 1427 (1953); *First National Bank in Albuquerque v. United States,* 552 F.2d 370, 374–77 (10th Cir.), *cert. denied,* 434 U.S. 835, 98 S.Ct. 122, 54 L.Ed.2d 96 (1977).

The Supreme Court's holding in *Dalehite* is summarized well in *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 810–11, 104 S.Ct. 2755, 2762–63, 81 L.Ed.2d 660 (1984), where Chief Justice Burger, writing for the Court, said:

> *Dalehite* involved vast claims for damages against the United States arising out of a disastrous explosion of ammonium nitrate fertilizer, which had been produced and distributed under the direction of the United States for export to devastated areas occupied by the Allied Armed Forces after World War II. Numerous acts of the Government were charged as negligent: the cabinet-level decision to institute the fertilizer export program, the failure to experiment with the fertilizer to determine the possibility of explosion, the drafting of the basic plan of manufacture, and the failure properly to police the storage and loading of the fertilizer.
>
> The Court concluded that these allegedly negligent acts were governmental duties protected by the discretionary function exception and held the action barred by § 2680(a).

In *Varig,* the Court held that the failure of Federal Aviation Administration employees to check certain potentially dangerous items in certifying the safety of an airplane was the exercise of a discretionary function for which the Government was not liable. 467 U.S. at 820, 104 S.Ct. at 2767.

■ These two decisions teach us that, where, as here, the Government is performing a discretionary function, the fact that discretion is exercised in a negligent manner does not make the discretionary function exception inapplicable. *See also Cisco v. United States,* 768 F.2d 788, 789 (7th Cir.1985); *Begay v. United States,* 768 F.2d 1059, 1062–66 (9th Cir.1985); *General Public Utilities Corp. v. United States,* 745 F.2d 239, 243, 245 (3d Cir.1984), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985); *Green v. United States,* 629 F.2d 581, 585–86 (9th Cir.1980).

■ The dismissal of appellant Hogan's complaint pursuant to Fed.R.Civ.P. 37(b)(2) is affirmed. The summary judgment in favor of appellees and against appellants, Oshita and Takatsuki, is affirmed. The chemical companies moved for summary judgment against Mrs. Fraticelli on the ground that her claim was barred by the military contractor defense. The district court did not rule upon this claim, and we address it only in general terms. Mr. Fraticelli was a civilian. Nevertheless, his exposure to Agent Orange occurred after the United States government had purchased the herbicide and while the government was testing it for military use. We believe, therefore, that the military contractor defense, as discussed in Judge Winter's opinion affirming summary judgment against the opt-out plaintiffs, 818 F.2d 187, applies to Mrs. Fraticelli's claim. We vacate the dismissal of her claim and remand to the district court for a determination on the motion for summary judgment. The summary judgment dismissing Fraticelli's cause of action against the United States is vacated and this cause of action is remanded to the district court with instructions to dismiss for lack of jurisdiction. No costs to any party.